1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTY STAHL, | No. 2:19-cv-00496-KJM-CKD |
| Plaintiff, | |
| v. | ORDER |
| ROBERT C. KLOTZ, et al., | |
| Defendants. | |

Plaintiff Dusty Stahl, a former court clerk for the Amador County Superior Court, brings this whistleblower retaliation action against defendants Robert Klotz, Dawn Harmon, Dana Elmore, Jana Giron, Aimee Trotter and Heather Gardella in their individual capacities, alleging defendants deprived plaintiff of her liberty and property interest in her employment and terminated her without due process in violation of federal and state law. Compl., ECF No. 1, ¶¶ 29–46. Defendants move to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). Am. Mot., ECF No. 5; Mem. of Points and Authorities ("Mem."), ECF No. 4-1. Plaintiff filed an opposition, ECF No. 7, and defendants filed a reply, ECF No. 10. The court held a hearing on the matter on June 28, 2019, and submitted the motion. As explained below, the court GRANTS IN PART and DENIES IN PART defendants' motion.

I. BACKGROUND

   A. Factual Background

Plaintiff alleges she worked as a Deputy Clerk for the Amador County Superior Court from December 2011 until her termination on April 13, 2018. Compl. ¶¶ 10, 28. According to plaintiff, prior to the events giving rise to this suit, she received overwhelmingly positive performance evaluations and comments from her supervisors, coworkers, and members of the public. *Id.* ¶¶ 12–13.

Plaintiff alleges she began working as a courtroom clerk for a new Amador County Superior Court judge following the judge's appointment to the bench in November 2015. *Id.* ¶ 15. Plaintiff claims about six months later, in Spring 2016, she began noticing "errors in the process of handling the criminal calendar," which plaintiff believed, based on her training and the Court Clerk's Manual, violated the constitutional rights of criminal defendants appearing before the judge, and thus violated federal and California law. *Id.* ¶¶ 15–18. Plaintiff's complaint alleges the following improprieties:

- Courtroom clerks checking boxes on minute orders indicating the judge had read all legal rights to defendants, even when plaintiff observed the judge had not read all the rights checked by the clerks, and thus, the minute orders did not accurately reflect what happened on the record;
- The court's not addressing defendants' time waivers;
- The court's not stating defendants' custodial status upon arraignment;
- The court's not providing rights advisements at the time of arraignment or entry of a plea;
- The court's sentencing defendants over the phone without an attorney present;
- The court's sentencing defendants with a plea in absentia, during which the judge permitted the attorney to sign the probation order; and
- The court's changing a defendant's probation order to add more custodial time after the defendant had signed the order and then not stating this fact on the record until plaintiff prompted the judge.

*Id.* ¶ 15. Plaintiff alleges she initially reported her concerns to the presiding judge of the court, and he told plaintiff to give the new judge some time to "[g]et into the swing of things." *Id.* ¶ 19.

After waiting four to five months, during which time the problems continued, in October 2016 plaintiff complained about the errors to defendant Elmore, plaintiff's supervisor. *Id.* Plaintiff alleges Elmore told plaintiff Elmore would talk to defendant Klotz, the Court Executive Officer, about the issue, but plaintiff never heard from Klotz. *Id.* Plaintiff alleges she then spoke to Klotz directly in January 2017 regarding her concerns about the judge. *Id.* Plaintiff asserts that after this conversation, from January or February 2017 until her suspension from her clerk duties in July 2017, plaintiff complained every three or four weeks to defendants Elmore, Klotz or Harmon, the Court Human Resources Specialist, about the purported violations of criminal defendants' constitutional rights and other improprieties, but the errors continued. *Id.* ¶¶ 19, 21. Plaintiff claims once she began making these complaints, the judge adopted a "very cold" tone toward plaintiff and became "increasingly agitated" whenever plaintiff prompted the judge about the perceived errors during court proceedings. *Id.* ¶¶ 20–21.

Plaintiff alleges that around the same time the judge began treating plaintiff in a hostile manner, the named defendants began subjecting her to retaliatory acts, culminating in her termination. *Id.* ¶¶ 22–23, 25–26, 44–45. She alleges defendants Giron, Trotter and Gardella, the judge's lead civil clerk, civil clerk and secretary, respectively, engaged in a continuous course of hostile conduct toward plaintiff in retaliation for plaintiff's complaints about the judge, including making false accusations about plaintiff to Klotz. *Id.* ¶¶ 22, 44. Plaintiff further alleges Elmore, in retaliation for plaintiff's complaints about the judge, informed plaintiff in June 2017 she would no longer be allowed to clerk for the subject judge's criminal calendar. *Id.* ¶ 23. Plaintiff alleges Elmore then sent plaintiff a text message on July 11, 2017, asking if plaintiff would consider taking $15,000 to $20,000 to leave her job voluntarily and warning "that reporting anything further would make it worse for Plaintiff at the Amador Court because it comes down to Judge versus Clerk." *Id.* ¶ 25. Plaintiff claims that two days later, on July 13, 2017, Harmon and Elmore told plaintiff that she would no longer be a courtroom clerk and "banned" plaintiff from the judicial side of the court building. *Id.* ¶ 26. Plaintiff alleges when she asked Harmon and Klotz the reason for their decision, they would not give her one. *Id.* A short time later, plaintiff went on medical leave, during which plaintiff learned she was under investigation for a hostile

work environment complaint made by defendants Giron and Gardella. *Id.* ¶ 27. While still on leave, plaintiff received a letter terminating her employment, effective April 13, 2018. *Id.* ¶ 28. Plaintiff alleges Klotz signed this letter, but Harmon and Elmore also played a role in the retaliatory decision to terminate her. *Id.*

### B. Procedural History

Plaintiff filed her complaint on March 20, 2019, asserting three claims against defendants. ECF No. 1. She brings her first and second claims under 42 U.S.C. § 1983 against defendants Klotz, Harmon and Elmore, alleging (1) deprivation of her property and liberty interest in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, and (2) denial of procedural due process in violation of the Fourteenth Amendment. *Id.* Plaintiff brings her third claim under state law against all defendants, alleging denial of procedural due process in violation of California Government Code section 8547.13. *Id.*

Defendants filed the pending motion to dismiss on April 15, 2019, ECF No. 4, and amended their motion on April 16, 2019, ECF No. 5. Plaintiff opposed, ECF No. 7, and defendants replied, ECF No. 10.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Twombly*, 550 U.S. at 555–56). This rule does not apply to "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), "allegations that contradict matters properly subject to judicial notice," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir.) (citing *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987)), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001), or material attached to or incorporated by reference into the complaint, *see id.* A court's consideration of documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III. <u>DISCUSSION</u>

Defendants move to dismiss plaintiff's state law whistleblower retaliation claim against all defendants, arguing plaintiff has not alleged a prima facie claim under California Government Code section 8547 *et seq.* and defendants are entitled to judicial immunity from liability. Mem., ECF No. 4-1, at 3–5. Defendants further move to dismiss plaintiff's § 1983 claims against defendants Harmon and Elmore and also to the extent plaintiff bases those claims on defendants' failure to administer progressive discipline as required by California law. *Id.* at 6–8.

A. <u>California Government Code Section 8547 Claim</u>

Defendants first move to dismiss plaintiff's state law claim for whistleblower retaliation. *Id.* at 3. The California Whistleblower Protection Act, Cal. Gov't Code § 8547 *et seq.*, "prohibits retaliation against state employees who 'report waste, fraud, abuse of authority, violation of law, or threat to public health.'" *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 882 (2008) (quoting Cal. Gov't Code § 8547.1), *superseded by statute on other grounds*, Act of July 15, 2010, 2010 Cal. Legis. Serv. Ch. 104, § 1. The Act expressly applies to the California courts, including the superior courts, imposing liability "in an action for damages" on "a person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against [a court] employee or applicant for employment for having made a protected disclosure." Cal. Gov't Code § 8547.13(e). To establish a prima facie case of whistleblower retaliation under section 8547 *et seq.*, a plaintiff must show she made a protected disclosure, she "was subjected to reprisals or other disciplinary action," and a "causal link" exists between the disciplinary action and the protected disclosure. *Manavian v. Dep't of Justice*, 28 Cal. App. 5th 1127, 1141 (2018) (citing Cal. Gov't Code §§ 8547.1, 8547.3), *rev. denied* (Jan. 23, 2019); *see also Wabakken v. Cal. Dep't of Corr. & Rehab.*, 801 F.3d 1143, 1146 (9th Cir. 2015) (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)) (whistleblower retaliation claim requires showing of causal link between protected activity and adverse action).

Defendants argue plaintiff has not established a whistleblower retaliation claim under section 8547 *et seq.* because the allegations in the complaint do not satisfy the protected disclosures element of a prima facie claim. Mem. at 3. Specifically, defendants contend the alleged improprieties about which plaintiff complained do not meet the definition of protected disclosures because these improprieties, having occurred in an open courtroom and on the record during official judicial proceedings, constitute publicly known information. *Id.* Plaintiff argues generally that the alleged improprieties "fall[ ] squarely within the definition of a 'protected disclosure' under California Government Code Section 8547.2(e)." Opp'n, ECF No. 7, at 1.

/////

/////

The Whistleblower Protection Act defines the term "protected disclosure" as:

> a good faith communication, including a communication based on, or when carrying out, job duties, that discloses or demonstrates an intention to disclose information that may evidence (1) an improper governmental activity, or (2) a condition that may significantly threaten the health or safety of employees or the public if the disclosure or intention to disclose was made for the purpose of remedying that condition.

Cal. Gov't Code § 8547.2(e). The Act further defines an "improper governmental activity" as:

> an activity by a state agency or by an employee that is undertaken in the performance of the employee's duties, undertaken inside a state office, or, if undertaken outside a state office by the employee, directly relates to state government, whether or not that activity is within the scope of his or her employment, and that (1) is in violation of any state or federal law or regulation, including, but not limited to, corruption, malfeasance, bribery, theft of government property, fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, or willful omission to perform duty, (2) is in violation of an Executive order of the Governor, a California Rule of Court, or any policy or procedure mandated by the State Administrative Manual or State Contracting Manual, or (3) is economically wasteful, involves gross misconduct, incompetency, or inefficiency.

*Id.* § 8547.2(c). The statutory definition of improper governmental activity includes "any activity by the Supreme Court, a court of appeal, a superior court, or the Administrative Office of the Courts, or by an employee thereof." *Id.*

Defendants rely on another whistleblower statute, California Labor Code section 1102.5, to argue that reporting publicly known information, such as improprieties occurring during criminal courtroom proceedings, does not constitute a protected disclosure under the Whistleblower Protection Act. *See* Mem. at 3–5. Defendants cite *Mize-Kurzman v. Marin Community College District*, 202 Cal. App. 4th 832 (2012), in support of this argument. Mem. at 3. The court in that case considered a jury instruction stating, "[r]eporting publicly known facts is not a protected disclosure" under two different California whistleblower statutes, Labor Code section 1102.5 and Education Code section 87160 *et seq. Mize-Kurzman*, 202 Cal. App. 4th at 844–45. The *Mize-Kurzman* court held the instruction was proper because reporting publicly known facts does not constitute a protected disclosure. *Id.* at 858–59. Defendants argue the holding of *Mize-Kurzman* extends to California Government Code section 8547 *et seq.*, and thus,

7

plaintiff's alleged complaints do not qualify for whistleblower protection. Mem. at 4–5. Plaintiff argues the *Mize-Kurzman* court did not consider the definition of a protected disclosure under section 8547 because the plaintiff there did not bring a claim under that statute. Opp'n at 12.

The reasoning underlying the *Mize-Kurzman* decision supports the conclusion that its interpretation of protected disclosures extends to section 8547. In reaching its holding, the *Mize-Kurzman* court relied on the "ordinarily understood meaning" of "disclosure" as "to reveal something that was hidden and not known." 202 Cal. App. 4th at 858–59 (citing *Webster's Third New International Dictionary* 645 (1968)) (quoting *Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1349–50 (Fed. Cir. 2001), *superseded by statute*, Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, sec. 101, § 2302(f)(1)(B), 126 Stat. 1465, 1466). Citing the California Legislature's choice to use "variants of the term 'disclose'" in Labor Code section 1102.5(b) and Education Code section 87162(e), the court concluded "there [was] no reason to believe the terms were being used in anything other than their ordinary sense." *Id.* Here, the plain language of section 8547.2 likewise supports construing the term "disclosure" consistent with its dictionary definition because there is no indication of any legislative or other intent to deviate from that definition; nothing in the legislative history of section 8547 or the relevant case law indicates the Legislature intended the term "protected disclosure" in section 8547.2(e) to have a significantly different meaning.

Further, the *Mize-Kurzman* court supported its interpretation of "protected disclosure" by citing cases analyzing the definition of a protected disclosure under the federal Whistleblower Protection Act. *Id.* at 858 (citing *Meuwissen v. Dep't of Interior*, 234 F.3d 9, 12–13 (Fed. Cir. 2000); *Francisco v. Office of Pers. Mgmt.*, 295 F.3d 1310, 1314 (Fed. Cir. 2002), *both superseded by statute*, § 2302(f)(1)(B), 126 Stat. at 1466). According to the *Mize-Kurzman* court, "[t]he California [Whistleblower Protection Act] . . . was intended to align state whistleblower statutes with those in existing federal law." *Id.* at 847 (internal quotations and citation omitted). Although Congress amended the definition of a protected disclosure under the federal Whistleblower Protection Act in November 2012 to include a disclosure that "revealed information that had previously been disclosed," 5 U.S.C. § 2302(f)(1)(B), at the time of the

8

*Mize-Kurzman* decision, federal law did not protect the disclosure of publicly known information. *See* § 2302(f)(1)(B), 126 Stat. at 1466 (adding § 2302(f)(1)(B) to the federal Whistleblower Protection Act). Unlike the federal Whistleblower Protection Act, the California Whistleblower Protection Act has not been amended to expressly protect disclosures of publicly known information. Therefore, the *Mize-Kurzman* court's reliance on Federal Circuit case law interpreting the pre-amendment definition of a protected disclosure under federal law supports interpreting that term, as used in the California Whistleblower Protection Act, to require the reporting of information not publicly known.

Plaintiff argues the *Mize-Kurzman* holding does not apply here because section 8547.2(e) provides a definition of a protected disclosure, unlike Labor Code section 1102.5. Opp'n at 11. However, plaintiff's argument overlooks the substantive similarity between the disclosures protected under each statute. Labor Code section 1102.5(b) protects disclosures government employees have "reasonable cause to believe . . . disclose[ ] a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Additionally, the Education Code provision analyzed in *Mize-Kurzman*, expressly defines "[p]rotected disclosure" as:

> a good faith communication that discloses or demonstrates an intention to disclose information that may evidence either of the following:
>
> (1) An improper governmental activity.
>
> (2) Any condition that may significantly threaten the health or safety of employees or the public if the disclosure or intention to disclose was made for the purpose of remedying that condition.

Cal. Educ. Code § 87162(e). The similarity between the disclosures protected under section 8547.2(e), Labor Code section 1102.5(b) and Education Code section 87162(e) reinforces the conclusion that the *Mize-Kurzman* holding extends to section 8547 *et seq.* Thus, the reporting of publicly known information does not constitute a "protected disclosure" within the meaning of section 8547.2(e).

Additionally, plaintiff argues that, even if section 8547 *et seq.* does not protect disclosures of publicly known information, at least some of the alleged improprieties about which plaintiff complained "were generally omissions, versus actions, and thus, not generally known to the public." Opp'n at 12–13. At hearing on defendants' motion, plaintiff's counsel further argued certain of the alleged errors, such as the clerks creating inaccurate minute orders, *see* Compl., ECF No. 1, ¶ 15, either did not occur on the public record or were only apparent, if at all, to the court, criminal defendants, prosecutor and defense attorney. Therefore, because members of the public must either have been present in the courtroom or scoured the record to learn of these errors, the errors cannot be publicly known. While this argument may have merit, the complaint does not allege the extent to which the purported improprieties in this case did not appear in the record or were otherwise not publicly known. Accordingly, given that plaintiff alleges these improprieties occurred in an open courtroom during official court proceedings on the public record, plaintiff's alleged complaints about these improprieties do not qualify as protected disclosures under section 8547.2(e).

The court GRANTS defendants' motion to dismiss plaintiff's claim based on California Government Code section 8547.13. Because the court finds plaintiff has failed to state a claim under section 8547.13, it need not address the question of judicial immunity.

B. <u>Deprivation of Property and Liberty Interest and Denial of Due Process</u>

In her first and second causes of action under § 1983, plaintiff alleges defendants Klotz, Harmon and Elmore violated her Fifth and Fourteenth Amendment rights under the U.S. Constitution by depriving her of her property and liberty interest in her job without due process of law. Compl. ¶¶ 29–36. Specifically, plaintiff alleges these defendants did not provide her with any documentary evidence of the charges against her, progressive discipline before taking disciplinary action against her or a pre-termination hearing. *Id.* ¶ 34. "To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (alteration in original) (quoting *Portman v. County of Santa*

*Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). Although defendants do not dispute the existence or deprivation of plaintiff's property interest in her employment as a court clerk, they move to dismiss plaintiff's § 1983 claims against defendants Harmon and Elmore and also to the extent plaintiff bases those claims on the allegation defendants did not comply with the requirement of progressive discipline under California law. Mem. at 6–8.

### 1. Claims Against Defendants Harmon and Elmore

Defendants contend even if plaintiff's due process rights were violated, plaintiff has not alleged facts showing defendants Harmon and Elmore either had any obligation to provide plaintiff with or took any actions depriving plaintiff of her constitutional due process rights. *Id.* at 6. Plaintiff argues Harmon, as the Court Human Resources Specialist, and Elmore, as plaintiff's direct supervisor, had a responsibility to know "what rights employees possess prior to disciplinary actions against [them]." Opp'n at 14. Plaintiff further argues she has alleged Harmon and Elmore "directed[ ] or ratified the tortious acts or omissions of other employees" and "each [was] instrumental in carrying out the illegal actions against Plaintiff." *Id.*

To state a claim under § 1983, a plaintiff must allege: (1) the defendants acted under the color of state law, and (2) the defendants deprived the plaintiff of a federal constitutional or statutory right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Additionally, a plaintiff must show the named defendants personally participated in the acts giving rise to the claim. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant." (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979))). A defendant personally participates in the alleged deprivation of a constitutional right "within the meaning of § 1983 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know

would cause others to inflict the constitutional injury." *Johnson*, 588 F.2d at 743–44 (citing *Beverly v. Morris*, 470 F.2d 1356, 1356 (5th Cir. 1972) (per curiam)).

Plaintiff has alleged sufficient facts at this stage of the proceedings to establish Harmon's and Elmore's personal participation in, or causal connection to, the alleged deprivation of plaintiff's procedural due process rights. In her complaint, plaintiff alleges defendants Klotz, Harmon, and Elmore

> denied Plaintiff procedural due process by failing and refusing to administer progressive discipline before taking disciplinary action against Plaintiff; by failing and refusing to provide Plaintiff any documents relied upon for her suspension and termination . . .; by failing to offer a [pre-termination hearing] for the suspension; and for the termination of employment.

Compl. ¶ 35. Although plaintiff alleges Klotz signed her termination letter, *id.* ¶ 28, she alleges Harmon and Elmore knew of her complaints about the subject judge because plaintiff complained directly to them between October 2016 and July 2017, *id.* ¶¶ 19, 21. She further alleges they relieved plaintiff of her job duties in retaliation for these complaints in June and July 2017; Elmore informed plaintiff she would no longer clerk for the judge's criminal calendar and asked if plaintiff would take money to leave her job voluntarily, while warning "that reporting anything further would make [the situation] worse for Plaintiff," and Harmon and Elmore subsequently relieved plaintiff of her duties entirely, banned her from the judicial side of the court building and refused to give plaintiff a reason for their decision. *Id.* ¶¶ 23, 25, 26, 28. Taking these allegations as true, plaintiff has alleged specific facts plausibly suggesting Harmon and Elmore, in retaliation for plaintiff's complaints, participated in or set in motion a series of acts by others they knew or reasonably should have known would result in plaintiff's termination without due process.

Accordingly, the court DENIES defendants' motion to dismiss plaintiff's § 1983 claims as to Harmon and Elmore.

          2.      <u>Progressive Discipline</u>

Defendants also argue the court must dismiss plaintiff's procedural due process claims to the extent plaintiff bases those claims on defendants' alleged failure to comply with the California rule of progressive discipline because the denial of state-law-mandated progressive

12

discipline is not cognizable as a federal constitutional claim. Mem. at 8. Plaintiff contends state-mandated progressive discipline can provide a proper basis for a due process claim under the U.S. Constitution. Opp'n at 14–15.

Once a court determines a person has a protected interest under the Fourteenth Amendment, "'the question remains what process is due.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972)). "The answer to that question is not to be found in the [state] statute." *Id.* In other words, federal law determines the process that is due. *Voight v. Savell*, 70 F.3d 1552, 1563 (9th Cir. 1995) (citing *Loudermill*, 470 U.S. at 541).

Here, plaintiff does not dispute the adequacy of California-mandated procedures under the U.S. Constitution; rather, she argues defendants did not follow the state-law-required procedure of progressive discipline before terminating her. Compl. ¶¶ 35, 46. As the Ninth Circuit concluded in *Voight*, this type of claim is not cognizable under federal law. *See Voight*, 70 F.3d at 1563 (holding plaintiff's allegation that defendants did not follow state-law-established procedures more extensive than those required by U.S. Constitution did not establish federal due process claim); *cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 95–96 (1984) (holding claim against state officials alleging they did not follow requirements of state statute was a state law claim), *superseded by statute on other grounds*, 28 U.S.C. § 1367.

The court GRANTS defendants' motion to dismiss as to the alleged denial of state-law-mandated progressive discipline.

C. <u>Leave to Amend</u>

Federal Rule of Civil Procedure 15(a)(2) provides, "[t]he court should freely give leave [to amend pleadings] when justice so requires," and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments," *Ascon Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). "In exercising its discretion [to grant or deny leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *Leighton*,

833 F.2d at 186 (quoting *Webb*, 655 F.2d at 979). However, "the liberality in granting leave to amend is subject to several limitations." *Ascon Props.*, 866 F.2d at 1160 (citing *Leighton*, 833 F.2d at 186). "Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Id.* (citing *Leighton*, 833 F.2d at 186). In addition, a court should look to whether the plaintiff has previously amended the complaint, as "the district court's discretion is especially broad 'where the court has already given a plaintiff one or more opportunities to amend [its] complaint.'" *Id.* at 1161 (alteration in original) (quoting *Leighton*, 833 F.2d at 186 n.3).

Here, plaintiff's alleged disclosures about the purported improprieties do not qualify for protection under California Government Code section 8547.2(e) because plaintiff has not pleaded sufficient facts in her complaint showing these improprieties were not publicly known information. As explained above, however, plaintiff plausibly argued in her pleadings and at hearing that at least some of these errors may not have occurred on the record or were otherwise not publicly known. Therefore, the court grants plaintiff leave to amend her complaint to clarify whether and to what extent the alleged improprieties were not publicly known, if she is able to amend while complying fully with Federal Rule of Civil Procedure 11.

Further, the court grants plaintiff leave to amend to bring a state law claim based on the denial of progressive discipline. While plaintiff may not bring a due process claim under § 1983 based on the denial of state-mandated progressive discipline, she may bring that claim under state law. *See Voight*, 70 F.3d at 1563. Under 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over federal and state claims so long as the various claims "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), *superseded by statute on other grounds*, 28 U.S.C. § 1367; *see also* 28 U.S.C. § 1367(a) (supplemental jurisdiction appropriate when state and federal claims "form part of the same case or controversy"). Plaintiff's allegations regarding the denial of progressive discipline arise from the same facts supporting her federal due process claims. Accordingly, the court finds granting plaintiff leave to amend would not be futile.

/////

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion to dismiss plaintiff's complaint as to plaintiff's California Government Code section 8547.13 claim and 42 U.S.C. § 1983 claims to the extent those claims are based on the denial of progressive discipline. The court DENIES defendants' motion as to plaintiff's § 1983 claims against defendants Harmon and Elmore. The court grants plaintiff leave to amend only to the extent consistent with this order.

IT IS SO ORDERED.

DATED: August 2, 2019.

_____
UNITED STATES DISTRICT JUDGE